# UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF WISCONSIN

**WAYNE J. MALONE, JR.,**

     **Plaintiff,**

**v.**                                      **Case No.  19-cv-891-wmc**

**HOOGLAND FOODS, LLC dba
MARCO'S PIZZA,**

     **Defendant.**

## DECLARATION OF WAYNE J. MALONE, JR.

I, Wayne J. Malone, Jr., state as follows:

1.      I am the plaintiff in the above-captioned case.

2.      I make this declaration based on my personal knowledge.

3.      In early September 2017, I applied for a delivery driver job with Marco's Pizza, then located at 820 8th St. S., Wisconsin Rapids, Wisconsin. General Manager Brooke Tristan ("Tristan") interviewed me, and then District Manager Jackie Steele ("Steele") interviewed me. Steele told me I was hired and said to come in on September 10, 2017 for my first day of work to complete paperwork and begin orientation.

4.      On September 10, 2017 I went to Marco's Pizza. In order to complete the paperwork, General Manager Tristan and I stood at a computer terminal that was off to the side of the counter where customers placed orders. General Manager Tristan stood directly in front of the computer screen, and I stood next to her left side.

5.     The computer terminal that General Manager Tristan and I used was in a small area that also contained, among other things, a printer, racks with boxed pizzas, racks with pizza delivery bags, racks with supplies, and a cooler with sodas.

6.     When General Manager Tristan and I were doing the paperwork, it was very busy in the store, and the area we were in frequently became congested. A couple drivers came into the area a few times, sometimes at the same time, to pick up delivery tickets from the printer, pizzas, pizza bags, and sodas and bag the pizzas. I had to move out of the way when drivers came into the area where I was standing, but Tristan would continue working on the computer.

7.     While General Manager Tristan worked on the paperwork on the computer, I was distracted by all the activity in the store, including the delivery drivers coming into the computer area to pick up and bag pizzas for delivery. I looked around at my new work environment. In addition to delivering pizzas, my job duties included answering phones, cashiering, taking customer orders and entering them on a computer, making and cutting pizzas, making dough, making sauce, cutting vegetables, and washing dishes. I observed what the delivery drivers and other employees were doing because I wanted to learn by watching them.

8.     General Manager Tristan hurried through the paperwork. She seemed mad about having to go through the paperwork; she said "Jackie" (i.e., District Manager Jackie Steele) was supposed to do it. Tristan also said she wanted to get through the paperwork quickly so that I could get to the orientation videos. I had to review the orientation videos and pass some tests before I could start working. I felt pressure to get

through the paperwork quickly, and I followed Tristan's instructions when she gave them.

9.      General Manager Tristan said that a User ID and password had to be set up for me in order to get started on the paperwork. Tristan slid the keyboard over to me and told me to type my email address and a password. I did not create my User ID or Employee ID Number ("EIN").

10.      General Manager Tristan asked me some questions, such as how many tax deductions I was claiming and whether I had received an employee handbook. I answered her questions, and she clicked on things or entered information into the computer.

11.      General Manager Tristan quickly scrolled through a lot of reading material on the computer screen and several times clicked on things or entered information.

12.      I did not enter my User ID or EIN into the computer during the process of completing the paperwork.

13.      At least one time after I created my password, General Manager Tristan slid the keyboard toward me and told me to type my password, which I did because I knew she was in a rush to get the paperwork done. I did not see what was on the computer screen when I typed my password. Tristan did not tell me why I had to type my password. Tristan did not tell me that, by entering my password, I was signing anything or agreeing to anything.

14.     Other than entering the information described in paragraphs 9 and 13, I did not enter anything else or click on anything on the computer.

15.     General Manager Tristan did not tell me to read any of the material she scrolled through on the computer, nor did she say that I needed to or should read any of it.

16.     General Manager Tristan did not say anything to me about arbitration or the defendant's Employment Arbitration Agreement ("Arbitration Agreement") (Declaration of Shanna Hubert, Exh. A, dkt. # 8-1) or any of its terms; she did not show me the Arbitration Agreement; and she did not give me the Arbitration Agreement in any form to read.

17.     Neither the defendant nor any of its employees ever said anything to me about arbitration or the Arbitration Agreement or any of its terms, showed me the Arbitration Agreement, or gave me the Arbitration Agreement in any form to read.

18.     I did not see or know of the existence of the Arbitration Agreement during the completion of the paperwork with General Manager Tristan.

19.     I did not knowingly electronically sign the Arbitration Agreement.

20.     I did not type my User ID ("WAYNEMALONE4788") or EIN ("266575") or name at the end of the Arbitration Agreement.

21.     I did not agree to the Arbitration Agreement.

22.     I did not agree to the delegation of any authority to an arbitrator to decide any disputes or legal issues relating to my employment with the defendant.

23.     I did not agree to the delegation of any authority to an arbitrator to decide anything relating to the existence, validity, or interpretation of the Arbitration Agreement.

24.     I did not authorize anyone to, on my behalf, sign the Arbitration Agreement, agree to the Arbitration Agreement, or agree to the delegation of any authority to an arbitrator to decide any disputes or legal issues relating to my employment with the defendant or to decide anything relating to the existence, validity, or interpretation of the Arbitration Agreement.

25.     Neither General Manager Tristan nor the defendant ever gave me a copy of the Arbitration Agreement.

26.     I did not see or know of the existence of the Arbitration Agreement until I received a copy of it from my attorney, Amy Scarr, on November 7, 2019.

27.     I did not receive a Notice of Right to Sue from the United States Equal Employment Opportunity Commission.

I declare under penalty of perjury that the foregoing is true and correct. Executed on December __11__, 2019.

Wayne J. Malone, Jr.